## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

RAVIS MARTINEZ WILLIAMS,

      **Petitioner,**

v.                                       **Case No.**

RICKY D. DIXON, SECRETARY,
FLORIDA DEPARTMENT OF CORRECTIONS,

      **Respondent.**

_____/

## PETITION FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY

Pursuant to 28 U.S.C. § 2254, the Petitioner, Ravis Martinez Williams, petitions this Honorable Court for a writ of habeas corpus. Petitioner was convicted and sentenced to life, under Florida's Prison Release Reoffender Act, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and is thus being held by the State of Florida in violation of federal law. By way of this Petition, Petitioner moves the Court to vacate his unconstitutional convictions and sentences, and/or to order any other relief as deemed just and proper by this Honorable Court.

## PROCEDURAL HISTORY[1]

Petitioner's judgments of convictions and sentences in the above-styled cause, were entered by the Circuit Court for the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida.

On July 8, 2004, Petitioner was arrested for allegedly committing the offenses of Carjacking; Burglary with Assault/Battery; Robbery Home Invasion; and Aggravated Battery, Victim Over 65 Years of Age. At first appearance, Petitioner plead not guilty, and was appointed counsel from the public defender's office.

On July 27, 2004, Petitioner was charged by information with Count One, Burglary of Occupied Dwelling with Assault or Battery; Count Two, Carjacking; Count Three, Robbery, Home Invasion; and Count Four, Battery, Victim Over 65 Years of Age. Subsequently, Petitioner hired private counsel to defend him, and counsel for Petitioner entered his notice of appearance on September 17, 2004.

The case proceeded to trial on March 23, 2005. On this same day, the state amended the information as to Count Two only and subsequently charged Petitioner with Grand Theft Motor Vehicle, instead of Carjacking. Petitioner

---

[1] Citations to the record of the Petitioner's appeal to the District Court of Appeal of the State of Florida, Second District, of his Motion for Post-Conviction Relief that was filed April 28, 2023, and denied January 10, 2024, will be designated as (R-_____). Citations to the trial transcripts will be designated as (T-_____).

waived arraignment, and again plead not guilty. The superceding information charged Petitioner with Count One, Burglary of Occupied Dwelling with Assault or Battery; Count Two, Grand Theft Motor Vehicle; Count Three, Robbery Home Invasion; and Count Four, Battery, Victim Over 65 Years of Age.

Petitioner's trial lasted approximately two days, and on March 24, 2005, Petitioner was found guilty as to all counts by the jury and sentenced to Count One: Life in prison as a prison release reoffender; Count Two: Five (5) years in prison; and Count Four: Five (5) years in prison. All sentences were imposed concurrently with credit for time served. The Court did not sentence Petitioner as to Count Three, Robbery Home Invasion, as the court determined it would be a violation of double jeopardy to do so based upon its judgment and sentence on Count One, Burglary of Occupied Dwelling with Assault or Battery.

A direct appeal was taken to the District Court of Appeal of the State of Florida, Second District, the same day Petitioner was sentenced. The Second District Court of Appeal per curiam affirmed Petitioner's judgments and sentences on February 15, 2006. The mandate issued on March 10, 2006.

Petitioner filed, *pro se*, Motion for Order to Vacate Judgment and Sentence in the Circuit Court for the Thirteenth Judicial Circuit on March 28, 2006. Approximately one year later, on March 27, 2007, Petitioner filed Motion to Rule, requesting that the circuit court enter an order on his motion for post-conviction

relief. Thereafter, the circuit court entered an order on June 7, 2007, for the state to respond to grounds three, four, five, six, and seven of Petitioner's Motion for Order to Vacate Judgment and Sentence and denied grounds one and two while also reserving ruling on ground eight. On January 18, 2008, the circuit court entered an order granting Petitioner an evidentiary hearing on his motion for post-conviction relief after receiving the state's response, as well as Petitioner's reply to the state's response. The circuit court's order granted the evidentiary hearing as to grounds three, five, in part, and seven, as well as denying Petitioner's remaining grounds.

Shortly after the conclusion of the evidentiary hearing, the circuit court denied Petitioner's remaining grounds on March 27, 2009. Petitioner appealed this denial to the Second District Court of Appeal on April 3, 2009. The Second District Court of Appeal entered its mandate, per curiam affirming the circuit court's ruling on September 14, 2010.

Nearly four years later, Petitioner filed a second, successive *pro se* Motion for Post-Conviction Relief alleging that his trial and conviction for Burglary of an Occupied Dwelling with Assault or Battery and Robbery Home Invasion constituted a violation of double jeopardy. Petitioner also alleged the circuit court failed to instruct the jury on a necessarily lesser included offense of Burglary for the charge of Robbery Home Invasion.

The circuit court dismissed the petition as untimely on October 8, 2014. On October 20, 2014, Petitioner filed his Notice of Appeal with the Second District Court of Appeal, appealing the circuit court's dismissal of his 3.850 motion. The Second District Court of Appeal per curiam affirmed the circuit court's Order Dismissing Petitioner's 3.850 on May 1, 2015. The mandate issued August 13, 2015.

While his appeal of the order denying his 3.850 was pending, Petitioner filed a Petition for Writ of Habeas Corpus with the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida on November 13, 2014, alleging that the circuit court erred when it incorrectly set aside his Robbery Home Invasion instead of his conviction for Burglary of Occupied Dwelling with Assault or Battery. The circuit court issued an Order denying Petitioner's Writ of Habeas Corpus, on December 17, 2015, stating that Petitioner's allegations were not cognizable in a habeas petition. Shortly thereafter, Petitioner filed his Notice of Appeal with the Second District Court of Appeal, appealing the circuit court's Order Denying Petition for Writ of Habeas Corpus. On July 31, 2015, the Second District Court of Appeal also per curiam affirmed the circuit court's Order Denying Writ of Habeas Corpus and the mandate issued on September 16, 2015.

On August 31, 2015, Petitioner filed a Motion to Correct Illegal Sentence, pursuant to Florida Rules of Criminal Procedure 3.800(a) in the circuit court. Petitioner alleged that the trial court's decision to impose sentence on Burglary of

an Occupied Dwelling with Assault or Battery, wherein Petitioner had also been convicted of Robbery Home Invasion that was committed during a single criminal episode, constituted the kind of sentencing error that could not have been imposed by any judge acting under the same set of facts, resulted in a patently illegal sentence, and the error was readily apparent from the face of the record. Petitioner's Motion to Correct Illegal Sentence was also denied by the circuit court on the basis that Petitioner's claim was not cognizable under Fla. R. Crim. P. 3.800(a) and that it was also time-barred pursuant to Fla. R. Crim. P. 3.850(b). Petitioner filed his Notice of Appeal on October 15, 2015.

On June 2, 2016, Petitioner wrote the Supreme Court of Florida a letter, which the Supreme Court of Florida treated as a Petition for Writ of Habeas Corpus and transferred the Petition to the Second District Court of Appeal for review on June 9, 2016. See Case No.: SC16-975 and 2D16-2754. On June 30, 2016, the Second District Court of Appeal ordered that Petitioner's appellate cases 2D15-4639 and 2D16-2754 be consolidated.

On May 1, 2017, Petitioner filed Motion to Correct Illegal Sentence.

On February 15, 2017, the Second District Court of Appeal affirmed, per curiam, the circuit court's Order Denying Motion to Correct Illegal Sentence in case 2D15-4639 and denying the Petition for Writ of Habeas Corpus in case 2D16-2754. On May 19, 2017, the mandate issued.

On September 13, 2017, Petitioner filed an Amended Motion to Correct Illegal Sentence, amending the Motion to Correct Sentence filed on May 1, 2017.

On February 22, 2018, Petitioner filed a Motion to Hear and/or Rule related to the pending Motion to Correct Illegal Sentence. On March 21, 2018, Petitioner petitioned the Second District Court of Appeal to issue a Writ of Mandamus directing the circuit court to rule on his pending Motion to Correct Illegal Sentence. See Case No.: 2D18-1091.

On July 18, 2018, the trial court issued an order denying Petitioner's Motion to Correct Illegal Sentence. On August 3, 2018, Petitioner filed Notice of Appeal with the Second DCA, appealing the order denying Petitioner's Motion to Correct Illegal Sentence. On December 3, 2018, the Second District Court of Appeal's issued an order denying Petitioner's Petition for Writ of Mandamus as moot.

Petitioner filed a Motion for Post-Conviction Relief and a Motion seeking permission to file a manifest injustice claim on January 14, 2019. On March 25, 2019, the circuit court issued an Order Denying Petitioner's Motion for Post-Conviction Relief with prejudice and issued an Order Denying Request for Permission to File Manifest Injustice claim. Petitioner filed Notice of Appeal to the Second District Court of Appeal on April 11, 2019.

On June 7, 2019, the Second District Court of Appeal affirmed, per curiam the circuit court's Order Denying Motion to Correct Illegal Sentence. On July 29, 2019, the mandate issued.

On January 1, 2020, Petitioner filed a Petition for Writ of Habeas Corpus in the above-styled cause.

On March 6, 2020, the Second District Court of Appeal affirmed, per curiam, the circuit court's Order Denying Motion for Post-Conviction Relief. On April 8, 2020, the mandate issued.

On January 6, 2021, Petitioner filed Motion for Disposition of Petition for Writ of Habeas Corpus with the circuit court. On March 2, 2021, Petitioner petitioned the Second DCA for Writ of Mandamus to compel the circuit court to issue an order on Petitioner's Petition for Writ of Habeas Corpus.

On March 10, 2021, the circuit court issued an Order Denying Petitioner's Petition for Writ of Habeas Corpus with prejudice. On April 6, 2021, the Second District Court of Appeal issued an Order Denying Petitioner's Petition for Writ of Mandamus as moot.

On April 7, 2021, Petitioner filed a Notice of Appeal with the Second District Court of Appeal, appealing the circuit court's Order Denying Petitioner's Petition for Writ of Habeas Corpus. On March 9, 2022, the Second District Court of Appeal

affirmed, per curiam, the circuit court's Order Denying Petitioner's Petition for Writ of Habeas Corpus. On May 2, 2022, the mandate issued.

On March 28, 2022, Petitioner hired an investigator to conduct an investigation into the jurors who were selected for his trial. The investigator completed the investigation on or about July 19, 2022, and disclosed the findings to Petitioner.

On April 28, 2023, Petitioner, by and through undersigned counsel, filed Motion for Post-Conviction Relief, alleging newly discovered evidence of juror misconduct which resulted in vitiation of Petitioner's Sixth Amendment Right to a fair trial.

On May 22, 2023, the circuit court issued an Order Denying Petitioner's Motion for Post-Conviction Relief, stating that it was procedurally barred.

On June 6, 2023, Petitioner, by and through undersigned counsel, filed Motion for Rehearing, which was subsequently denied by the circuit court on June 8, 2023.

On June 19, 2023, Petitioner, by and through undersigned counsel, filed a Notice of Appeal to the Second District Court of Appeal, appealing the circuit court's Order Denying Motion for Post-Conviction Relief and Motion for Rehearing.

On August 8, 2023, Petitioner filed, pro se, a Motion to Correct Illegal Sentence, raising successive double jeopardy claim.

On September 7, 2023, the trial court entered an Order Denying Motion to Correct Illegal Sentence.

On September 28, 2023, Petitioner appealed to the Second District Court of Appeal the circuit court's Order Denying Motion to Correct Illegal Sentence. On October 3, 2023, the Second District Court of Appeal per curiam affirmed the circuit court's denial of Petitioner's pro se Motion to Correct Illegal Sentence.

On December 12, 2023, the Second District Court of Appeal per curiam affirmed the circuit court's denial of Petitioner's Motion for Post-Conviction Relief[2]. The mandate issued January 10, 2024. The instant application for federal review is directed at the Second District Court of Appeal's mandate issued on January 10, 2024.

---

[2] On February 16, 2024, Petitioner, through undersigned counsel, filed Motion to Correct Illegal Sentence, alleging that the circuit court's failure to utilize a scoresheet at sentencing resulted in an illegal sentence. On March 13, 2024, the circuit court entered an order for the State to respond within forty-five (45) days to Petitioner's 3.800(a), Fla. R. Crim. P. The circuit court, after concisely summarizing Petitioner's arguments, also acknowledged in its order that the use of no scoresheet or the incorrect scoresheet is considered 'scoresheet error' under Florida Law and that such claims are cognizable under Fla. R. Crim. P. 3.800(a). The circuit court specifically directed the State to respond as to whether the circuit court "improperly set aside count three, whether the scoresheet was calculated incorrectly, and whether Defendant is entitled to resentencing." Petitioner has no other motions, pleadings, or filings pending in any other jurisdiction, excluding the Fla. R. Crim. P. 3.800(a), Motion to Correct Illegal Sentence filed on February 16, 2024.

## **REQUEST FOR EVIDENTIARY HEARING**

Petitioner requests that this Honorable Court conduct a plenary evidentiary hearing on Petitioner's claims pursuant to 28 U. S. C. § 2254(e)(2).

When a petitioner fails to develop the factual basis of a claim in state court, § 2254(e)(2) precludes an evidentiary hearing on that claim except under certain limited circumstances. However, "a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). If there was no such failure on the part of the petitioner, AEDPA does not preclude an evidentiary hearing. *See Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002).

If a petitioner does not fail to develop the factual basis of a claim in state court, pre-AEDPA law is applied to determine if a hearing is appropriate or required. *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998). First, *Townsend v. Sain* is applied to determine if a hearing is mandatory. 372 U.S. 293 (1963), overruled on other grounds by *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), superseded by statute as stated in *Williams v. Taylor*, 529 U.S. 420, 433 (2000). Under *Townsend*, a federal habeas court *must* hold an evidentiary hearing under the following circumstances:

> If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by

11

> the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id*. at 313; *see also Williams v. Allen*, 542 F.3d 1326, 1347 (11th Cir. 2008). Further, "[i]t is well established that a habeas petitioner is entitled to an evidentiary hearing on a claim *if he or she alleges facts that, if proved at the hearing, would entitle petitioner to relief*." *Meeks v. Singletary*, 963 F.2d 316, 319 (11th Cir. 1992) (quoting *James v. Singletary*, 957 F.2d 1562, 1573 n.17 (11th Cir. 1992)). If a federal habeas court determines that a hearing is not prohibited by § 2254(e)(2) or mandatory under *Townsend*, it exercises discretionary authority to determine whether a hearing should be conducted. *See Williams v. Allen*, 542 F.3d at 1347.

*Townsend* and *Meeks* mandate an evidentiary hearing in Petitioner's case as the the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing, there is a substantial allegation of newly discovered evidence, and the state trier of fact did not afford the habeas applicant a full and fair fact hearing. Petitioner pled substantial factual allegations related to juror misconduct that could not be resolved without an opportunity for factual development of his claim. *See Williams v. Taylor*, 529 U.S. 420, 442 (2000) (*citing Smith v. Phillips,* 455 U.S. 209, 217, 219–221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982)).

This Court should grant an evidentiary hearing to permit development of Petitioner's substantial claim that was denied in the Florida state court through no fault of Petitioner.

## STANDARD OF REVIEW

Petitioner seeks relief pursuant to 28 U. S. C. § 2254(a); which confers federal habeas jurisdiction on this Honorable Court over "a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." The present petition is filed subsequent to the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") of 1996. Thus, any claim that was adjudicated on the merits must be reviewed in accordance with certain limitations on relief found in 28 U. S. C. § 2254(d):

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of that claim-

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

If the state court, to which the claim was previously presented, failed to resolve the merits of a claim entirely, or failed to reach any component of the standards prescribed for the claim by federal law, then § 2254(d) is inapplicable to the federal court's analysis of the claim or component. *See Wiggins v. Smith*, 559

U.S. 510, 534 (2003) ("our review is not circumscribed by a state court conclusion with respect to prejudice as neither of the state courts below reached this prong of the *Strickland* analysis"); *see also Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts . . . never reached the issue of prejudice, . . . we examine this element of the . . . claim *de novo* . . . ."). Thus, § 2254(d) is a limitation on the authority of federal courts to entertain claims, not a standard of deference, which necessarily implies as a prerequisite the authority to cognize and rule on a claim. For those claims or portions of claims that were adjudicated on the merits by a state court, § 2254(d) is concerned with limiting a federal habeas court's authority to grant relief once a federal constitutional violation has been found to exist and does not influence the federal court's discharge of its Article III mandate to determine the existence of constitutional error.

Once it has been determined that the state court reached the merits of a petitioner's claim, the "threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). The "clearly established" requirement "is the functional equivalent" of "[t]he antiretroactivity rule recognized in *Teague* [*v. Lane*, 489 U.S. 288 (1989)]. " *Id.* at 379. The *Teague* anti-retroactivity rule prohibits habeas petitioners from relying on rules of federal law announced after their state convictions become final. *Id.* at 379.

The requirement in § 2254(d)(1) that the law be "clearly established" can be read as a codification of *Teague*, and thus, *Teague's* guidance for making a determination pursuant to that requirement is applicable. *See id.* at 381. *Teague* instructs that a rule is clearly established if it is "'dictated by precedent existing at the time. . .'" and is not clearly established if it "'breaks new ground or imposes a new obligation on the States or the Federal Government.'" *Williams*, 529 U.S. at 381 (citing *Teague*, 489 U.S. at 301 (emphasis deleted)). An additional requirement is added by § 2254(d)(1) that the rule be clearly established by precedents of the United States Supreme Court. *Id*. The "clearly established" determination must be made by federal courts based on "independent evaluation" and not "a broader principle of deference requiring federal courts to validate reasonable, good faith interpretations of the law by state courts." *Id*. at 382-83 (internal quotations omitted). In other words, federal courts must "attend to every state-court judgment with utmost care" but are not required "to defer to the opinion of every reasonable state-court judge on the content of federal law" when analyzing the nature of a claim. *Id*. at 389. If the rule relied upon was clearly established at the time the state court conviction became final, relief is available if the state decision is contrary to or involves an unreasonable application of that rule. *Williams* recognizes two ways a state court decision can be contrary to clearly established federal law. The *Williams* Court interpreted the "contrary to" clause to contemplate

16

state court decisions "substantially different from the relevant precedent of this Court," *Williams*, 529 U.S. at 405, and articulated accordingly the two possible circumstances under which state courts may err based on contrariness:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Id*. at 412-13. The first circumstance includes state court decisions that "appl[y] a rule that contradicts the governing law set forth in [United States Supreme Court] cases." *Id*. at 405. The second circumstance includes state court decisions that reach a result different from a Supreme Court precedent "confront[ing] a set of facts that are materially indistinguishable from" those of the precedent, and is not limited to precedents with identical facts. *Id*. at 406.

As opposed to the "contrary to" clause, which contemplates state court decisions that misidentify the governing legal principle, the "unreasonable application" clause permits relief when "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. In making the "unreasonable application" determination, federal courts should ask whether the state court's application of the rule was "objectively unreasonable." *Id*. at 408. As to the meaning of the term "unreasonable," the *Williams* Court explained:

> The term "unreasonable" is no doubt difficult to define. That said, it is a common term in the legal world and, accordingly, federal judges are familiar with its meaning. For purposes of today's opinion, the most important point is that an **unreasonable** application of federal law is different from an **incorrect** application of federal law. (emphasis added).

*Id*. at 410. That difference was explained by the *Williams* Court as follows: "a state court's **incorrect** legal determination has never been allowed to stand because it was **reasonable**. We have always held that federal courts, even on habeas, have an independent obligation to say what the law is." (emphasis added). *Id*. at 411 (citations and quotations omitted).

AEDPA permits federal courts to grant a petition when a state court's decision involved an unreasonable determination of the facts in light of the evidence presented. 28 U. S. C. § 2254(d)(2). In making that determination, federal habeas courts must presume state court factual findings to be correct unless the presumption is rebutted by clear and convincing evidence. 28 U. S. C. § 2254(e)(1). However, that presumption is far from absolute. Congress clearly contemplated that habeas petitioners would challenge, and federal courts would consider, whether state court factual determinations are supported by the record when it enacted 28 U. S. C. § 2254(f) ("If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the

evidence to support such determination."). If an examination of the sufficiency of the evidentiary support for a state court's factual finding were not contemplated, it would make no sense to provide a mechanism for facilitating review of precisely that question.

Furthermore, as the Supreme Court demonstrated in *Wiggins*, and subsequently in *Miller-El v. Cockrell*, a faithful application of section § 2254(d)(2) cannot be accomplished without looking beneath a state court's factual findings and assessing the reasonableness of the conclusions reached by the state court in light of the evidence that was before the court. *Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Wiggins v. Smith*, 559 U.S. 510, 528 (2003); *see also Guidry v. Dretke*, 397 F.3d 306, 328 (5th Cir. 2005) (granting relief in capital case where state court's decision was based on factual finding that ignore countervailing record evidence); *Beck v. Bowersox*, 257 F.3d 900, 901 (8th Cir. 2001) ("§§ 2254(d)(2) and e(1) require meaningful federal court review of the evidentiary record considered by the state courts.").

Under AEDPA, Petitioner's application for review is further subject to 28 U. S. C. § 2244(d)(1), which states:

> (d)(1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> (A)     the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review;

(B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

In the instant case, Petitioner asserts that he is entitled to the exception enumerated in 28 U. S. C. § 2244(d)(1)(D). Petitioner discovered the information of the juror's misconduct on July 19, 2022. Petitioner filed for post-conviction relief in the state circuit court on April 28, 2023, tolling the time required for Petitioner to apply for federal relief under 28 U. S. C. § 2254(d). *See* 28 U. S. C. § 2244(d)(2). Subsequently, Petitioner exhausted his state post-conviction remedies and the final determination on Petitioner's claim that is the subject of this Petition was adjudicated on January 10, 2024, when the Second District Court of Appeal issued its mandate, per curiam affirming the circuit court's order denying Petitioner's state post-conviction claim.

## **CLAIMS FOR RELIEF**

By his petition for Writ of Habeas Corpus, Petitioner asserts that his conviction and sentence were obtained in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution for all the reasons set forth in the instant petition and presented to this Honorable Court in this proceeding.

**GROUND I**

**PETITIONER WAS DENIED A FAIR AND IMPARTIAL JURY TRIAL DUE TO JUROR MISCONDUCT, IN VIOLATION OF THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

"[O]ur common-law heritage, our Constitution, and our experience in applying that Constitution have committed us irrevocably to the position that the criminal trial has one well-defined purpose–to provide a fair and reliable determination of guilt." *Estes v. Texas*, 381 U.S. 532, 565 (1965) (Warren, C.J., with whom Douglas and Goldberg, JJ., joined, concurring). "[T]he right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors.' " *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "[D]ue process alone has long demanded that, if a jury is to be provided to the defendant, regardless of whether the Sixth Amendment requires it, the jury must stand impartial and indifferent to the extent commanded by the Sixth Amendment." *Morgan v. Illinois*, 504 U.S. 719, 727 (1992) (citations omitted). "Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors." *McDonough Power Equipment Inc. v. Greenwood*, 464 U.S. 548, 554 (1984).

The United States Supreme Court has established that in order to obtain relief and a new trial as a result of juror concealment of background information a two prong test must met: 1) the moving party must demonstrate that a juror failed to answer a material *voir dire* question honestly, and 2) that a correct response

would have been a valid basis for a challenge for cause. *McDonough Power Equip. Corp v. Greenwood*, 464 U.S. 548, 556 (1984). *McDonough* first "requires a determination of whether the juror's answers were honest." *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 955 F.2d 1467, 1473 (11th Cir.1992). Then, there must be a showing of bias that would disqualify the juror. *See id.; see also United States v. Perkins,* 748 F.2d 1519, 1532 (11th Cir.1984). Where actual bias is present, the juror's inclusion in the petit jury is never harmless error. *See McDonough,* 464 U.S. at 556.

Bias can be shown expressly or by way of implication such that it is presumed. Justice Brennan explained further:

> "[t]he bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law." *United States v. Wood,* 299 U.S. 123, 133, 57 S.Ct. 177, 179, 81 L.Ed. 78 (1936). *See also Smith v. Phillips,* 455 U.S. 209, 221–224, 102 S.Ct. 940, 948–949, 71 L.Ed.2d 78 (1982) (O'CONNOR, J., concurring). Because the bias of a juror will rarely be admitted by the juror himself, "partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it," *id.,* at 221–222, 102 S.Ct., at 948–949, it necessarily must be inferred from surrounding facts and circumstances. Therefore, for a court to determine properly whether bias exists, it must consider at least two questions: are there any facts in the case suggesting that bias should be conclusively presumed; and, if not, is it more probable than not that the juror was actually biased against the litigant. Whether the juror answered a particular question on *voir dire* honestly or dishonestly, or whether an inaccurate answer was inadvertent or intentional, are simply factors to be considered in this latter determination of actual bias.

*McDonough Power Equip.*, 464 U.S. at 558 (1984)(Justice BRENNAN, with whom Justice MARSHALL joins, concurring in the judgment.)); *see also BankAtlantic,* 955 F.2d at 1473.

"A party who seeks a new trial because of non-disclosure by a juror during *voir dire* must show actual bias", either "by express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed." *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir.1984) quoting *United States v. Nell*, 526 F.2d 1223, 1229 (5th Cir.1976)).

In the instant case, Petitioner discovered that Juror Regan Ann Winbigler Tidwell (hereinafter "Juror Tidwell") intentionally concealed and omitted material information during *voir dire* that was relevant to her jury service at Petitioner's trial. Prior to the beginning of *voir dire*, Juror Tidwell was required to fill out a juror questionnaire. (R-30). On question number four (#4) of the questionnaire, Juror Tidwell was asked, "Have you, a member of your family, or a close friend ever: been arrested or accused of a crime?" (R-30).

At the beginning of *voir dire*, the trial judge emphasized the importance of this stage of the trial and the necessity of the venire members to answer questions during *voir dire* openly and honestly in order to seat a fair and impartial jury. (T-14-22). Moreover, the trial judge explained that if any of the questions posed during *voir dire* seemed embarrassing or too personal for the potential jurors, they

24

were welcome to answer the questions privately at the bench. (T-19-20). It is important to note that before *voir dire*, the trial court required the jurors to "solemnly swear or affirm you will answer truthfully all questions asked of you as prospective jurors, so help you God[.]" (T-26).

During the state's examination of the venire, the assistant state attorney questioned potential jurors as to their answers to questions posed on the questionnaire, specifically question number four (#4). (T-49). Juror Tidwell responded as follows:

MS. TIDWELL[3]: "Family member."

ASA CARMONA[4]: "Was it here in Hillsborough County?"

MS. TIDWELL: "Yes."

ASA CARMONA: "How long ago was that?"

MS. TIDWELL: "Six years ago."

ASA CARMONA: "You mind me asking the nature of the offense?"

MS. TIDWELL: "It was petit theft, my younger brother." (T-49).

The assistant state attorney then asked Juror Tidwell if attorneys for either party or the trial judge had been involved with her brother's case, to which Juror Tidwell

---

[3] "MS. TIDWELL" is Juror Regan Ann Winbigler Tidwell.
[4] "ASA CARMONA" is the assistant state attorney who prosecuted Petitioner and who also prosecuted Juror Tidwell's younger brother for his VOP in his strong-arm robbery case that resulted in a favorable resolution for Juror Tidwell's younger brother.

replied, "No." (T-49-50). At the conclusion of *voir dire* and after the jury panel was selected, the trial court swore the jury panel in. (T-101).

Juror Tidwell's response that her younger brother was the only member of her family or close friend who had been arrested or charged with a crime at the time of Petitioner's trial was a false statement. On July 19, 2022, Petitioner discovered that Juror Tidwell's then husband, Eric Andrew Tidwell, had three criminal cases listed on the Hillsborough HOVER site. They included, Petit Theft in October of 1992, Grand Theft in December of 1992, and Burglary/Grand Theft/Dealing in Stolen Property from 1994. (R-50-71). Juror Tidwell and Eric Andrew Tidwell had been married for over a year at the time of Defendant's trial.

Juror Tidwell's younger brother, James Christopher Winbigler, had a juvenile criminal record stemming back to when he was eleven (11) years old. (R-72-158). On March 7, 1997, James Winbigler was charged with Petit Theft/Shoplifting. (R-159-170).

Additionally, James Christopher Winbigler was charged with Strong Arm Robbery on April 18, 2000. (R-171-184). James Winbigler's mother (who is also Juror Tidwell's mother) bailed him out of jail on May 26, 2000. (R-185). On July 24, 2000, James Winbigler entered into a plea agreement with the state, specifically receiving a withhold of adjudication for the offense of Strong-Arm Robbery and was sentenced to sixty (60) months of probation. (R-186-7). James Winbigler's

probation was violated on May 31, 2002, for failing to report from December 2001 to May 2002, and for failing to submit to random drug testing during that time. (R-188-90). According to the violation of probation arrest warrant, James Winbigler had been living at his mother's home (10203 Majestic Palm Ct., #101 in Riverview), where Juror Tidwell was living in 2002. (R-39-46).

James Winbigler was arrested on the VOP on June 26, 2002, and the assistant state attorney assigned to prosecute his case was the same assistant state attorney who questioned Juror Tidwell during *voir dire*. (R-191-2). On August 5, 2002, James Winbigler was granted a $2,500 bond, which his mother posted. (R-193-5). He was subsequently sentenced to "house arrest or work release" and an "in jail drug treatment program." (R-196-7).

On January 27, 1994, Lorne Winbigler, Juror Tidwell's other brother, was charged with DUI Serious Bodily Injury in Osceola County. According to the docket, he had been in jail for sixty-eight days when he plead guilty, was adjudicated guilty, and sentenced to five years of probation, with a lifetime suspension of his driver's license. (R-212-17).

Lorne Winbigler was also arrested and charged on May 30, 1995, with the following offenses: Violation of Domestic Violence Injunction, False Imprisonment, Burglary of a Dwelling while Armed with Battery and Assault, Burglary of a Dwelling with Assault, and Burglary with Battery or Assault." (R-

27

201-3). Lorne Michael Winbigler was convicted of armed burglary which resulted in his incarceration from November 21, 1995, to October 1, 1998, (R-198-200).

The one common address that is listed on the background checks of Juror Regan Ann Tidwell, James Winbigler and Lorne Winbigler is 2808 S. 63rd Street in Tampa, Florida. That is also the address listed on their mother's (Sheryl Winbigler) background check. According to a tax document, the property was bought by the Juror Tidwell's mother's sister, Helen Jean Hoover, on July 30, 1971. (R-223-5). It is unclear if the Juror Tidwell's mother lived with her sister prior to her death, but when Helen Jean Hoover died on January 28, 1991, she willed the property to her siblings. The background checks show Lorne Winbigler, James Winbigler and Juror Tidwell all lived there with their mother, Sheryl, in 1995. This address is listed on James Winbigler's arrest reports from 1995, 1997 and 2000.

Clearly, Juror Tidwell omitted and concealed this material information during *voir dire* in an attempt to minimize her family's involvement with the criminal justice system. (R-218-22). Moreover, the prosecution of Juror Tidwell's younger brother for Strong-Arm Robbery by the same assistant state attorney who prosecuted Petitioner at trial for Robbery Home Invasion is such a close factual connection. This factual similarity clearly establishes the actual bias of Juror Tidwell, especially considering the disparity in sentences that Juror Tidwell's younger brother received in comparison to the sentence received by Petitioner.

In the instant case, the circuit court summarily denied Petitioner's motion for post-conviction relief as being time barred. The Second District Court of Appeal per curiam affirmed the circuit court's summary denial. In light of the evidence presented in the state court proceedings, the decision of the Second DCA was both contrary to and an unreasonable application of clearly established federal law.

Under an almost identical set of facts, the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 420, 442 (2000), determined that there was nothing in the trial record of that case that would have put a reasonable attorney on notice that the juror's nonresponse was a deliberate omission of material information. In reversing and remanding the Fourth Circuit Court of Appeal's decision regarding juror misconduct, the Supreme Court observed that "[w]e should be surprised, to say the least, if a district court familiar with the standards of trial practice were to hold that in all cases diligent counsel must check public records containing personal information pertaining to each and every juror." *Id.* at 443. The Supreme Court went on to state that because of the juror and the prosecutor's silence regarding the prosecutor's representation of the juror during a divorce proceeding, there was no basis for an investigation into the juror's responses during voir dire, and thus section 2254(e)(2) does not apply to petitioner's related claims of juror bias and prosecutorial misconduct. *Id*. In *Williams*, the petitioner

29

completely failed to raise his claim of juror bias and prosecutorial misconduct in the state court and yet the Supreme Court held that its analysis "should suffice to establish cause for any procedural default petitioner may have committed in not presenting these claims to the [state] courts in the first instance." *Id.* at 444.

In the instant case, Petitioner attempted to utilize the appropriate state mechanism for collateral review under *Martin v. State*, 322 So.3d 25 (Fla. 2021). In *Martin*, the Florida Supreme Court established two prongs for claims of standalone juror misconduct. Under *Martin*, to prevail on a standalone postconviction claim of juror misconduct for failing to provide information during voir dire, the defendant must establish two prongs: first, that the juror failed "to answer honestly a material question on voir dire," *Martin* at 34 (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, (1984)), and second, that the juror was actually biased against the defendant, *Id.* at 34–35 (quoting *Boyd v. State*, 200 So. 3d 685, 697 (Fla. 2015)).

The Florida Supreme Court in *Martin* found that "once the defendant has established that his juror misconduct claim is timely, the postconviction court's consideration of the claim on the merits must be governed by the standards we have articulated here—standards designed to vindicate the defendant's right to an impartial jury—not by the standards set out in *Jones* [*v. State*, 709 So.2d 512 (Fla. 1998)]." *Id.* at 38. That is because "postconviction standalone juror misconduct

claims will always be predicated on evidence that is asserted to have been previously unavailable." *Id.* at 38. Yet the Second District Court of Appeal still denied Petitioner the opportunity to develop his claim of juror misconduct.

It is undisputed that a question about the arrests and criminal charges of a juror's family members and close friends is material to jury service, especially when the undisclosed arrests and charges of a juror's family members are virtually indistinguishable to the case at bar. More importantly, a truthful answer from Juror Tidwell to that question would have undoubtedly led to questioning by Petitioner's trial counsel to determine if the prosecutor who prosecuted Petitioner was also directly involved with prosecuting Juror Tidwell's brother and whether Juror Tidwell had any knowledge of or familiarity with the prosecutor. In the end, an honest answer to either of those questions would have been a valid basis challenge for cause. *See e.g., Canty v. State*, 597 So.2d 927 (Fla. 3rd DCA 1992); *see also Hagerman v. State*, 613 So.2d 552 (Fla. 4th DCA 1993); *Henry v. State*, 586 So.2d 1335 (Fla. 3rd DCA 1991).

Juror Tidwell's responses to the assistant state attorney's inquiries were intentionally obfuscating and designed to conceal her experiences with the criminal justice system. Juror Tidwell's material concealments and omissions allowed the same assistant state attorney who prosecuted both Juror Tidwell's brother and Petitioner, for virtually identical robbery charges, to go undiscovered

during voir dire. Considering that James Winbigler obtained such a favorable resolution from the State via this same assistant state attorney after violating his probation on the strong-arm robbery case, it is reasonable to conclude that Juror Tidwell's material concealment of the assistant state attorney's involvement with her brother's case was intentional and a result of her actual bias in favor of the state.

Had Juror Tidwell chosen to be forthcoming and honest about her brothers' and husband's criminal history, it would have given the Petitioner, as well as the state and the trial court, the opportunity to examine Regan Ann Tidwell adequately and effectively for actual bias.

Furthermore, Juror Tidwell's brother, Lorne Michael Winbigler, served three (3) years in prison for Burglary of a Dwelling while Armed with Battery and Assault. The similarities between both of Juror Tidwell's brothers' cases and Petitioner's case are striking, and obviously known to Juror Tidwell at the time of Petitioner's trial for the offenses of Burglary of an Occupied Dwelling with Assault and/or Batter and Robbery Home-Invasion. Through the intentional non-disclosure of such pertinent information regarding Juror Tidwell's family members' criminal histories, it is evident that Juror Tidwell's prior experiences with such closely related crimes would cause her to act in a biased manner, rather than fulfill her duty as a fair and impartial juror.

Courts have recognized that "[c]ertain false statements that 'might be harmless in isolation' may present a 'much more sinister picture' when viewed as a whole." *United States v. Stewart*, 433 F.3d 273, 304 (2d Cir. 2006) (quoting *Green v. White*, 232 F.3d 671, 678 n.10 (9th Cir. 2000)). "[R]epeated lies in voir dire [may] imply that the juror concealed material facts in order to secure a spot on the particular jury." *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007) (citation omitted). Juror Tidwell's failure to disclose such relevant and material information during voir dire, after being expressly asked on her juror questionnaire and by the assistant state attorney to elaborate on her family's criminal history is stark evidence of an insidious motivation to serve on Petitioner's jury.

When allegations of juror misconduct surface after trial, the investigation of the alleged misconduct "is committed to the discretion of the district court and is reviewed only for an abuse of that discretion." *United States v. Prosperi*, 201 F.3d 1335, 1340 (11th Cir. 2000). There is no per se rule that requires a district court to investigate all claims of juror misconduct. *United States v. Cuthel*, 903 F.2d 1381, 1382–83 (11th Cir. 1990). A district court has discretion to decide a motion for a new trial without conducting an evidentiary hearing to investigate. *See United States v. Schlei*, 122 F.3d 944, 994 (11th Cir. 1997). The Eleventh Circuit has stated that an evidentiary hearing is not required if "the record contain[s] all the evidence

needed to dispose of each of the grounds asserted as a basis for a new trial." *United States v. Scrushy*, 721 F.3d 1288, 1305 (11th Cir. 2013).

But a district court must investigate juror misconduct when the party alleging misconduct makes an "adequate showing" of evidence to "overcome the presumption of jury impartiality." *Cuthel*, 903 F.2d at 1383 (citations omitted). Once the duty to investigate is triggered, the district court has "substantial discretion in choosing the investigative procedure to be used in checking for juror misconduct." *United States v. Register*, 182 F.3d 820, 840 (11th Cir. 1999) (quotation marks omitted). To justify a post-trial evidentiary hearing involving juror misconduct, a moving party must show "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred." *Cuthel*, 903 F.2d at 1383 (quotation marks and alterations omitted). "The more speculative or unsubstantiated the allegation of misconduct, the less the burden to investigate." *Id.* (quotation marks omitted).

The crux of the aforementioned Eleventh Circuit opinions is that when a party who seeks a new trial based on a juror's nondisclosure during *voir dire* and makes a prima facie showing that the juror may not have been impartial and thus was plausibly challengeable for cause—in other words, when the moving party has presented "clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred"—the district court must hold

34

an evidentiary hearing prior to ruling on the motion for a new trial in order to adequately investigate the alleged juror misconduct. *See Cuthel*, 903 F.2d at 1383.

The United States Supreme Court in *Tanner* identified four mechanisms that protect defendants' Sixth Amendment rights: (1) jurors can be "examined during *voir dire*"; (2) "during the trial the jury is observable by the court, by counsel, and by court personnel"; (3) "jurors are observable by each other, and may report inappropriate juror behavior to the court *before* they render a verdict"; (4) "after the trial *a party may seek to impeach the verdict by non-juror evidence of misconduct*." (emphasis added). *Tanner vs. United States,* 483 U.S. at 127 (1987).

The evidence presented to the state courts was sufficient to show that Juror Tidwell's misconduct affected the outcome of Petitioner's trial and violated his due process right to a fair and impartial jury. The Second District Court of Appeal unreasonably failed to acknowledge that the evidence of Juror Tidwell's untruthfulness on *voir dire* was sufficient evidence to establish the denial of Petitioner's right to due process, a fair and impartial jury, and a reliable conviction and sentence as guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments. *Morgan v. Illinois*, 504 U.S. 719, 727 (1992); *Irwin v. Dowd*, 366 U.S. 717, 722 (1961); *Rogers v. McMullen*, 673 F.2d 1185, 1188 (11th Cir. 1982).

The Second District Court of Appeal's failure to acknowledge this evidence is not just an unreasonable application of federal law but is completely contrary to

*Williams v. Taylor*, 529 U.S. 420 (2000), wherein the United States Supreme Court determined that where the trial record contains no evidence that would have put a reasonable attorney on notice that a juror's nonresponse was a deliberate omission of material information, it is not the fault of the petitioner, but rather the juror who conceals such information. *Id.* at 442 – 443. In *Williams*, the Court of Appeals originally denied the petitioner's juror misconduct claim finding that he failed to exhaust his claim in the state court, specifically stating that, "[t]he documents supporting [petitioner's] Sixth Amendment claims have been a matter of public record since ... 1979. Indeed, because [petitioner's] federal habeas counsel located those documents, there is little reason to think that his state habeas counsel could not have done so as well[.]" *Id.* at 443. The Supreme Court disagreed and went on to say that, "[w]e should be surprised, to say the least, if a district court familiar with the standards of trial practice were to hold that in all cases diligent counsel must check public records containing personal information pertaining to each and every juror." *Id.* at 443.

In *Sallie v. Humphrey*, 2013 WL 4011009, (M.D. Ga, August 6, 2013), the district court summarized *Williams* as follows:

> In *(Michael) Williams*, a juror failed to disclose, in response to direct questioning during voir dire, that she had been married to the sheriff and that one of the prosecutors handled her divorce from the sheriff. After the resolution of Williams's state habeas proceedings, an investigator stumbled upon the connections among the juror, the sheriff, and the prosecutor. The Fourth Circuit held that state habeas

36

counsel had not been diligent because they, like federal habeas counsel, could have discovered the juror's misconduct. The Supreme Court disagreed. The Court held that diligence "depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id.* at 435 (emphasis added). Based on the information available to Williams's counsel, there was no reason to question the veracity of the juror, and thus, "there was no basis for an investigation into [the juror's] marriage history." *Id.* at 443. *Williams* stands for the proposition *that there is not a general duty to investigate the background of every juror.* However, when a reasonable attorney would be placed on notice regarding the veracity of a particular juror, there is a duty to develop the matter in state court. (emphasis added).

In the instant case, and in light of the Supreme Court's holding in *Williams,* neither Petitioner nor his prior counsel had any reason to question the veracity of Juror Tidwell's responses during *voir dire* based on the information available at the time and therefore had no duty to investigate Juror Tidwell or any of the other jurors who deliberated Petitioner's verdict. Furthermore, Juror Tidwell concealed the criminal records of family members with different surnames, which made the discovery of these concealments far more challenging. As such, the only way to properly determine whether Juror Tidwell concealments were the result of actual bias is to conduct a hearing at which Petitioner has an opportunity to present evidence as to Juror Tidwell's bias. As the Supreme Court explained over a century ago, "[b]ias or prejudice is such an elusive condition of the mind that it is most difficult, if not impossible, to always recognize its existence." *Crawford v. United States,* 212 U.S. 183, 196 (1909).

Moreover, the Supreme Court understood the elusive nature of the human mind and its capacity for harboring bias and in *McDonough* the Court used the definition of impartiality as a reference point for contrast. *See McDonough*, 464 U.S. at 554 (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). The Court defined impartiality as a condition that allows a juror to be "capable and willing to decide the case solely on the evidence." *Id.* Once it is understood what is required of a juror, *i.e.*, impartiality, it becomes easier to apprehend its opposite, bias. But the Court warned that "hints of bias [are] not sufficient." *Id.* Instead, only "[d]emonstrated bias in the responses to questions on *voir dire* may result in a juror's being excused for cause." *Id.*

The Court equated "demonstrated bias in the response to questions on *voir dire*" as information, had it been disclosed, that would have provided a "a *valid basis* for *a challenge* for cause." *McDonough* 464 U.S. at 556 (emphasis added). The Court did *not* require that this information would have to *ipso facto* result in a for-cause dismissal, but rather only that it be a "*valid basis*" for a "*challenge*" for cause. (emphasis added) *Id*. As such, Petitioner asserts the information concealed by Juror Tidwell, as shown *supra*, was objectively material and moreover would have undoubtedly been a valid basis to challenge her seating as a juror for cause.

Considering the plethora of criminal charges for which her brothers were arrested and convicted, it is wholly unreasonable to believe that Juror Tidwell

knew only of her younger brother's misdemeanor petit theft arrest. Especially since Juror Tidwell lived with both of her brothers during the time they were arrested and sent to jail for numerous offenses. Moreover, at the time of Petitioner's trial, Juror Tidwell's husband had been convicted of crimes nearly identical to the offenses that Juror Tidwell was required to judge and render a verdict upon during Petitioner's trial. Clearly, Juror Tidwell intentionally lied and omitted material facts to garner a seat on Petitioner's jury, and thus, she was a juror in name only. "If the answers to [voir dire] questions are willfully evasive or knowingly untrue, the talesman, when accepted, is a juror in name only." *Clark v. United States,* 289 U.S. 1, 11 (1933).

"[T]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215 (1982). "Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury." *Dennis v. United States*, 339 U.S. 162, 171-72 (1950). Ultimately Petitioner "was entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors." *Parker* v. *Gladden*, 385 U.S. 363, 366 (1966) (per curiam).

## <u>CONCLUSION</u>

For the above stated reasons, the Petitioner, Ravis Martinez Williams, moves this Honorable Court to issue a writ of habeas corpus granting relief in this case.

Respectfully submitted,

By:    <u>*/s/ Bryan D. Savy, Esq.*</u>
Bryan D. Savy, Esq.
Attorney for Petitioner
Florida Bar No.: 0012442
997 S. Wickham Rd.
West Melbourne, FL 32904
Telephone: (321) 728-4911
Facsimile: (321) 728-4870
Email:  <u>bsavy@brosslawoffice.com</u>
<u>melissa@brosslawoffice.com</u>

I hereby certify that I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel in this case on March 29, 2024.

<u>*/s/ Bryan D. Savy, Esq.*</u>
Bryan D. Savy, Esq.
Attorney for Petitioner